**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

WILLIAM TAYLOR,

Plaintiff,

v.

CITY OF RACINE,
TOM MOLBECK,
JASON MARS, and
LA'NEKA HORTON,

Defendants.

CIVIL ACTION NO.

JURY TRIAL DEMANDED

---

# COMPLAINT

---

NOW COMES the Plaintiff, William Taylor ("Taylor"), by and through his attorneys, McDonald Law Firm, LLC, and as and for his Complaint against the Defendants, City of Racine, Tom Molbeck, Jason Mars, and La' Neka Horton, allege as follows:

## NATURE OF ACTION

1. This civil-rights and employment-retaliation action arises under 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments to the United States Constitution, and Wisconsin Statute § 230.90. Taylor alleges that Defendants discriminated against him because of his race by denying him equal employment opportunities and subjecting him to disparate treatment, including the denial of a promotional opportunity, the failure to provide performance evaluations, suspension without pay, and termination, in violation of the Equal Protection Clause of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983. Taylor further alleges that Defendants retaliated against him for complaining about and opposing race discrimination, in violation of the rights secured by

42 U.S.C. § 1981 and enforced against the individual Defendants through 42 U.S.C. § 1983. Taylor also alleges that Defendants suspended and terminated him in retaliation for speaking as a private citizen on matters of public concern, in violation of the First Amendment and 42 U.S.C. § 1983, and that the City retaliated against him for lawfully disclosing governmental misconduct, in violation of Wisconsin Statute § 230.90.

## PARTIES

2. Plaintiff William Taylor ("Taylor") is an adult resident of the State of Wisconsin with a residence located at 1904 Racine Street, Racine, Wisconsin 53403.
3. Defendant City of Racine ("the City") is a political subdivision organized under the laws of the State of Wisconsin having a principal place of business located at 730 Washington Avenue, Racine, Wisconsin 53403.
4. Defendant Tom Molbeck ("Molbeck") was at all times material this action the Director of Parks, Recreation and Cultural Services ("PRCS") for the City.
5. Defendant Jason Mars ("Mars") was at all times material this action the Superintendent for the PRCS.
6. La' Neka Horton ("Horton") was at all times material this action the Human Resources Director for the City of Racine.

## JURISDICTION AND VENUE

7. This court has subject matter jurisdiction under 28 U.S.C. § 1331 as to Taylor's First Amendment Retaliation claim and 42 U.S.C. §1983 claim because those claims arise under the Constitution of the United States.

8. This court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all other claims arise in and are so related that they form part of the same case or controversy as the aforementioned claims.
9. The Eastern District of Wisconsin has personal jurisdiction over Defendants because the City's principal place of business is located within the District, the City performs substantial business within the District, and the individual Defendants, on information and belief, reside within the Court's district.
10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

11. Taylor was employed with the City for approximately sixteen years.
12. During the final years of his employment, Taylor served as the Recreational Program Coordinator.
13. The City classified the Recreational Program Coordinator position as a part-time position despite Taylor regularly worked 39 to 40 hours per week.
14. Promotions within the City are heavily dependent upon employee performance evaluations.
15. According to the City's employee handbook, performance evaluations are to be conducted annually. A true and correct copy of performance evaluation policy from the employee handbook is attached hereto as **Exhibit A**.
16. According to the City's employee handbook, performance evaluations are to be issued to all employees regardless of the number of hours per week the employee works.

17. Despite the City's policy requiring annual performance evaluations, Taylor did not receive a single performance evaluation during his 16 years of employment with the City.
18. Taylor applied for the position of Supervisor for the Cesar E. Chavez Community Center.
19. Taylor was ranked as one of the four finalists for the position.
20. After the City chose the four finalists but before the City made a decision on the successful candidate, the City intentionally modified the job description to include requirements that only one of the four final candidates possessed.
21. The candidate that possessed the newly modified requirements was Matt Rooney (Caucasian).
22. Matt Rooney's father, John Rooney, was the Commissioner for the City's Department of Public Works.
23. The City awarded Matt Rooney with the position of Supervisor for the Cesar E. Chavez Community Center.
24. Jason Mars was part of the panel who made the decision to hire Matt Rooney as the Supervisor for Cesar E. Chavez Community Center.
25. Jason Mars was the person who selected Matt Rooney to run the specific programs that later would be included as newly added requirements for the Supervisor position.
26. Taylor had requested to run the same programs that Mars had delegated to Matt Rooney.
27. Taylor was more qualified than Matt Rooney for the position.
28. Jason Mars reported directly to Tom Mobeck.
29. On information and belief, Tom Molbeck was part of the decision making panel that hand-picked Matt Rooney for the Supervisor position.

30. On September 4, 2025, Taylor published a Facebook post under the name Ade Jefe raising serious matters of public concern including, but not limited to, the City engaging in favoritism and nepotism, the City failing to investigate complaints of harassment in the workplace, the City intentionally altering the application process as a means to avoid hiring a certain candidate, the City failing to pay wages owed, and the City refusing to investigate a complaint of unpaid wages. A true and correct copy of the September 4, 2024 Facebook post is attached hereto as **Exhibit B.**

31. Taylor's September 4, 2024 post tagged the City's Facebook account and Mayor Cory Mason.

32. On September 7, 2024, Taylor published another Facebook post under the name Ade Jefe raising serious matters of public concern including, but not limited to, the City modifying a job posting after finalists had already been selected in order to guarantee a particular candidate's selection, the City refusing to provide employees with performance evaluations, and the City discriminating against "black and brown" employees. A true and correct copy of the September 7, 2024 Facebook post is attached hereto as **Exhibit C**.

33. In the September 7, 2024 Facebook post, Taylor included an image of the original job posting and an image of the modified job posting that appeared *after* finalists had been selected.

34. Taylor's September 7, 2024 Facebook post exposed the City's tendency to alter the legal hiring process for the purpose of choosing unqualified, but nonetheless desired, candidates.

35. Taylor stated in the September 7, 2024 post that the City was failing to follow the policies and procedures set forth in the employee handbook.

36. Taylor's September 7, 2024 Facebook post tagged the City's Facebook account and Mayor Cory Mason.

37. On September 18, 2025 Taylor was suspended without pay as a direct result of raising serious concerns of public interest in his Facebook posts.

38. On September 18, 2025, Taylor published a Facebook post under the name Ade Jefe raising serious matters of public concern including, but not limited to, public employees "stealing property, harassing employees, and committing fraud" and the City refusing to take any action against those public employees. A true and correct copy of the September 18, 2025 Facebook post is attached hereto as **Exhibit D**.

39. On September 22, 2025, Taylor emailed Laneka Horton, a City human-resources representative, raising serious matters of public concern including, but not limited to, the City refusing to adhere to its own policies and procedures, the City discriminating against Taylor based upon his race. A true and correct copy of the September 22, 2025 email is attached hereto as **Exhibit E**.

40. In the email to Laneka Horton, Taylor stated that it was difficult not to feel he was being discriminated against because of his race or age "when a whole lot of community center employees have not been valued on my level" and that he "won't stop advocating for my self [or] my coworkers, there are very talented individuals past and present that have been ignored by the PRCS leadership."

41. On September 23, 2025, Horton issued a notice to terminate Taylor's employment. Horton copied Molbeck on the notice. A true and correct copy of the rebuttal is attached hereto as **Exhibit F**.

42. On September 25, 2025, Taylor submitted a rebuttal to the City placing him on suspension and seeking his termination. Taylor's rebuttal included specific references to the City taking action against him for raising issues of public concern. A true and correct copy of the rebuttal is attached hereto as **Exhibit G**.

43. On September 26, 2025, Horton issued a directive for Taylor to return his "City-issued cellphone", "City issued laptop", "City issue keys", and "Any other items issued to you that are in your possession." Horton copied Molbeck on the directive. A true and correct copy of the rebuttal is attached hereto as **Exhibit H**.

44. On September 29, 2025 Talor submitted a second rebuttal in which he emphasized that his social-media posts were intended to address matters of public concern and public interest, and that he had never been warned about the posts or asked to remove them. A true and correct copy of the second rebuttal is attached hereto as **Exhibit I.**

45. Taylor's September 29, 2025 rebuttal stated that his Facebook post was made as a "concerned, public-interest call to city officials to examine certain matters of possible misconduct, oversight, or inequity within the PRCS/Parks and Recreation department."

46. On October 1, 2025, Horton, on behalf of the City, terminated Taylor's employment asserting that Taylor had violated Sections 6.03.24 and 6.12.A.7 of the employee handbook. Horton copied Molbeck on the termination letter.

47. Taylor did not violate sections 6.03.24 or 6.12.A.7 of the employee handbook.

## LEGAL CLAIMS

## COUNT I

## FIRST AMENDMENT RETALIATION

48. Taylor incorporates paragraphs 1 through 47 as if fully set forth herein.

49. Taylor's Facebook posts were made as a private citizen.

50. Taylor's Facebook posts raised serious issues of public concern including, but not limited to, the City engaging in fraudulent activity, the City ignoring complaints of harassment and discrimination, the City refusing to adhere to its own policies and procedures, and the City intentionally modifying a job posting as a means to hire its less qualified hand-picked candidate.

51. The issues raised in Taylor's Facebook posts were protected by the First Amendment to the Constitution of the United States of America.

52. The actions of the City were designed to punish and retaliate against Taylor for having expressed his complaints, opinions, and concerns in violation of the First Amendment.

53. The actions of the Defendant had the effect of chilling the rights of free speech belonging to employees such as Taylor.

54. If not checked, the Defendant's conduct would serve to prevent and preclude others from questioning and complaining about misconduct.

55. Taylor has incurred substantial damages as a direct result of the Defendants' unlawful conduct.

## COUNT II

## VIOLATION OF WISCONSIN STATUTE § 230.90

56. Taylor incorporates paragraphs 1 through 47 as if fully set forth herein.

57. Taylor lawfully disclosed to the public and to the City that the City had engaged in fraud, intentionally modified a job posting for the purpose of hiring an unqualified but desired candidate, refused to comply with its own policies and procedures, refused to investigate

or address complaints of harassment and discrimination, and engaged in nepotism and favoritism.

58. The City disciplined and terminated Taylor because he exercised his rights under the First Amendment to the Constitution of the United States and/or Article I, Section 3 of the Wisconsin Constitution, by disclosing and making public the City's misconduct as alleged herein.

59. Taylor has incurred substantial damages as a result of the Defendant's violation of Wis. Stat. § 230.90.

## COUNT III

## VIOLATION OF 42 U.S.C. §§1981 AND 1983 AGAINST MOLBECK, MARS, AND HORTON

60. Taylor incorporates paragraphs 1 through 47 as if fully set forth herein.

61. Taylor is a member of a protected class as he is African American and his color is Black.

62. Molbeck, Mars, and Horton subjected Taylor to adverse employment actions and materially adverse treatment, including denial of promotions, refusing to evaluate Taylor's performance, suspending Taylor's employment, and terminating Taylor's employment.

63. Molbeck, Mars, and Horton denied Taylor a promotional opportunity and selected a less qualified Caucasian, White applicant for the position.

64. The conduct by Molbeck, Mars, and Horton was motivated by Taylor's race, color, complaints, and/or opposition to discrimination in the workplace.

65. 42 U.S.C. § 1983 provides a cause of action against persons who, under color of state law, deprive another person of rights, privileges, or immunities secured by the Constitution and laws of the United States.

66. Molbeck, Mars, and Horton are "persons" within the meaning of 42 U.S.C. § 1983.

67. At all times relevant to this Complaint, Molbeck, Mars, and Horton acted under color of state law and within the scope of their employment with the City, using the authority, incidents, and instrumentalities of their public offices.

68. Taylor had a good-faith and reasonable basis to complain about race discrimination against himself and other Black employees, and Taylor opposed such discrimination through his Facebook posts, his September 22, 2025 email to Horton, and his rebuttals to the suspension and proposed termination.

69. Taylor's complaints and opposition to race discrimination constituted protected activity, and Molbeck, Mars, and Horton knew of Taylor's protected activity before Taylor's suspension and termination.

70. Mars personally participated in the decision to select Matt Rooney, a less-qualified White applicant, for the Supervisor position after Mars assigned Rooney the programs that were later added as requirements for that position, while denying Taylor the opportunity to run those same programs.

71. On information and belief, Molbeck personally participated in the decision to select Rooney for the Supervisor position, supervised Mars, received notice of the proposed termination and directives issued to Taylor, and participated in or approved the adverse actions taken against Taylor.

72. Horton personally received Taylor's September 22, 2025 complaint that the City was discriminating against him based on race; the next day, Horton issued a notice to terminate Taylor's employment; and Horton thereafter directed Taylor to return City property and terminated Taylor's employment on October 1, 2025.

73. Molbeck, Mars, and Horton subjected Taylor to disparate treatment, denied him promotional opportunities and performance evaluations, suspended him without pay, and terminated his employment because of his race and/or in retaliation for his complaints and opposition to race discrimination.

74. The close temporal proximity between Taylor's complaints of race discrimination and the notice of termination, together with the disparate treatment and circumstances alleged above, supports an inference that Taylor's protected activity was a motivating factor in the adverse actions taken against him.

75. By intentionally discriminating against Taylor because of his race, Molbeck, Mars, and Horton deprived Taylor of his right to equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983.

76. As a direct and proximate result of Molbeck's, Mars's, and Horton's discriminatory and retaliatory conduct, Taylor suffered lost wages, lost benefits, emotional distress, and other compensable injuries.

77. Section 1981 guarantees Taylor the same right as White citizens to make and enforce contracts, including the performance, modification, and termination of his employment relationship and the enjoyment of all benefits, privileges, terms, and conditions of that relationship.

78. Section 1981 further protects Taylor from retaliation for complaining about and opposing race discrimination affecting his own employment relationship and the employment rights of other Black employees.

79. Because Molbeck, Mars, and Horton were state actors, Taylor enforces the rights secured by 42 U.S.C. § 1981 against them through the cause of action provided by 42 U.S.C. § 1983.

80. Taylor engaged in activity protected by § 1981 when he complained that the City discriminated against Black employees, complained that the City discriminated against him because of his race, and opposed racial discrimination in the terms and conditions of municipal employment.

81. Molbeck, Mars, and Horton knew that Taylor had complained about and opposed race discrimination. Horton received Taylor's September 22, 2025 written complaint of race discrimination and copied Molbeck on the September 23, 2025 notice of termination and subsequent employment directives.

82. Taylor's suspension without pay, notice of termination, directive to surrender City property, and termination were actions that would dissuade a reasonable employee from complaining about or opposing race discrimination.

83. The temporal sequence—Taylor's complaints of race discrimination followed by Horton's notice of termination the next day, the directive to return City property, and Taylor's termination—together with the lack of prior warning and Taylor's allegation that he did not violate the cited handbook provisions, supports a plausible inference that Defendants acted with retaliatory intent.

84. But for Taylor's complaints about and opposition to race discrimination, Molbeck, Mars, and Horton would not have pursued, approved, or caused Taylor's suspension and termination.

85. Molbeck, Mars, and Horton thereby retaliated against Taylor for asserting rights protected by 42 U.S.C. § 1981 and, while acting under color of state law, deprived Taylor of those statutory rights in violation of 42 U.S.C. § 1983.

86. As a direct and proximate result of the retaliation, Taylor suffered lost wages, lost benefits, emotional distress, and other compensable injuries.

## PRAYER FOR RELIEF

A. Order the City of Racine to reinstate Taylor.

B. Order Defendant to pay Taylor appropriate back pay, lost benefits, and out of pocket costs.

C. Order Defendant to pay Taylor compensatory damages.

D. Order Defendant to pay Taylor punitive damages.

E. Order Defendant to pay Taylor's attorney's fees and costs.

F. Order such other relief deemed just and equitable by the Court.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Dated this 13th day of October, 2026.

**McDonald Law Firm, LLC**
Attorneys for Plaintiff

By: s/Shannon D. McDonald
Shannon D. McDonald
WI Bar No. 1036954
McDonald Law Firm, LLC
N96W18221 County Line Rd. #200
Menomonee Falls, WI 53051
262-252-9122 (Office)
262-252-9123 (Direct)
414-395-8773 (Fax)
sdm@themklaw.com